Harry P. Justice, Jr., and Margaret M. Justice, Husband and Wife v. Commissioner.
Justice v. Commissioner
Docket No. 59897.
United States Tax Court
T.C. Memo 1958-109; 1958 Tax Ct. Memo LEXIS 118; 17 T.C.M. (CCH) 564; T.C.M. (RIA) 58109; June 11, 1958
*118 Ervin M. Entrekin, Esq., for the petitioners. Miller Bowen, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioners for the taxable year 1952 in the amount of $266.40. The only question for determination is whether the petitioners are entitled to exemption credits for the two children of Harry P. Justice, Jr., by a prior marriage. Findings of Fact Some of the facts have been stipulated and are found as stipulated. The petitioners are husband and wife, and reside in Nashville, Tennessee. They filed a joint income tax return for the year 1952 with the district director of internal revenue for Tennessee. Harry P. Justice, Jr., sometimes referred to as petitioner, was formerly married to Azile T. Justice. Two children were born of this marriage: a daughter, Christine Tyne Justice, born December 1, 1941, and a son, Harry P. Justice III, born May 24, 1944. On November 17, 1950, Azile was granted a divorce from petitioner in the Chancery Court of Davidson County, Tennessee. Under the decree, the custody of the children was awarded to their mother, Azile, *119 and petitioner was to pay $90 per month for their support. During the year 1952 the children resided with their mother in the Vinehill Apartment Development, in Nashville, which was under the management of the Nashville Housing Authority. They occupied a two-bedroom apartment, for which the rent was $42 per month. Azile paid a total rent of $504 for the year 1952. Occupancy in the Vinehill Apartments was restricted to families with low incomes, and in the case of Azile, her income, after payroll deductions, plus support payments for the two children, was not supposed to exceed $2,880 a year. Azile was employed by the Auto Supply Company, Inc., from January 1 to August 21, 1952. Her gross wages for that period amounted to $1,478.45, of which $157.33 was withheld for income taxes and $29.57 was withheld for social security taxes, the net amount received by her being $1,291.55. From August 25 through December 31, 1952, Azile was employed by the Grady W. Jones Company, receiving gross wages of $957. Of this amount, $129.70 and $14.37 were withheld for income taxes and social security taxes, respectively, leaving $802.93 as the net amount received by her from the Jones Company. *120 Supplementing the total of $2,094.48 net wages received from the above employers, Azile in 1952 also received $174.80 as a refund of 1951 income tax; $53.86 as the payment of interest on a second mortgage which she and petitioner jointly owned; and $1,080 from petitioner for the support of the two children. In addition to the fixed monthly payments made to Azile, petitioner during 1952 expended $42.30 for educational insurance for the two children, and $30 to $40 for clothing, in the form of Christmas and birthday gifts. And it was the usual thing for one or both of the children to spend the week end with petitioners. Also, petitioners expended $45 during the taxable year for a Blue Cross Hospitalization Plan which covered the above two children, as well as petitioners and their one child. Throughout 1952 Azile owned and operated an automobile for her personal use. At the beginning of 1952, the automobile was "some kind of off brand" car. Early in 1952, this car was replaced by the purchase of a Chevrolet, probably a 1949 model. Before the purchase was made, petitioner, at Azile's request, drove the Chevrolet so as to advise her of his opinion thereof. Among the uses to which *121 the automobile was put by Azile was that of driving to and from her place of employment. On occasions, petitioner's mother made minor purchases of clothing for the two children, and at times gave them some spending money. The money so expended and supplied was comparatively very small and insignificant in amount. On their 1952 return, petitioners claimed an exemption credit for each of the two children of petitioner and Azile. The respondent in determining the deficiency herein disallowed the credits so claimed. The amount expended by the petitioners for the support of the two children of petitioner and Azile during 1952 was more than one-half of the total amount expended for the support of the said children in that year. Opinion Azile was not available to testify in the trial of this case and, as a consequence, we have no direct evidence as to the specific amount actually expended in 1952 for the support of the two children. On the evidence which we do have, however, we are satisfied that of such support, the petitioners supplied more than one-half, and we so conclude and hold. The evidence persuasively shows that aside from the $1,080 received from the petitioners, Azile *122 in 1952 had available for expenditure on her own behalf and that of the children no more than $2,323.14. The respondent, on brief, now concedes that petitioners expended as much as $1,170.30 toward the support of the two children. And if Azile expended only an equal amount from her own funds for that purpose, she would have had left for her own personal and living expenses only $1,152.82, which would be less than the amount available for and expended in support of each child. Taking into account the fact that in 1952 Azile replaced her old automobile through the acquisition of a fairly current model Chevrolet automobile, and considering also the reasonable costs for operating and maintaining an automobile during the year and a reasonable amount for her own living expenses and clothing and for her other personal and recreational activities, we are satisfied and convinced that Azile expended for her own account an amount somewhat in excess of the amount expended on either of the children. It follows that the amount supplied by petitioners for the support of the two children was in excess of one-half of the amount available for their support and actually expended therefor during the *123 taxable year. Decision will be entered for the petitioners.